Case 3:22-cv-00044   Document 50   Filed on 11/03/23 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
November 03, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| IN RE THE COMPLAINT AND | § | |
| PETITION OF CALLAN MARINE | § | |
| LTD. AS OWNER OF THE DREDGE | § | |
| "GENERAL PATTON" ITS | § | |
| ENGINES, TACKLE, APPAREL, | § | CIVIL ACTION NO. 3:22-cv-00044 |
| ETC., IN A CAUSE FOR | § | |
| EXONERATION FROM OR | § | |
| LIMITATION OF LIABILITY | § | |

## OPINION AND ORDER

Pending before me is an Opposed Motion to Lift Stay/Dissolve the Limitation Injunction ("Motion to Lift Stay") filed by Ashley Whaley and Zach Lewis ("Claimants"). Dkt. 40. Having reviewed the briefing, the record, and the applicable law, I **GRANT** the Motion to Lift Stay. Claimants may proceed with their claims against Callan Marine Ltd. ("Petitioner") in the 10th District Court of Galveston County, Texas.

## BACKGROUND

On July 10, 2021, Claimants were allegedly injured when their fishing vessel collided with Petitioner's dredge pipe near Galveston Bay. On July 14, 2021, Claimants filed suit against Petitioner in the 10th District Court of Galveston County. Claimants served Petitioner on August 3, 2021. Six months later, in February 2022, Petitioner instituted this limitation proceeding. On August 24, 2022, I entered an Order Directing Claimants to File and Make Proof of Claims, Directing the Issuance of Monition, and Restraining Prosecution of Claims. Claimants filed their answers and claims on October 18, 2022. On October 28, 2022, at Petitioner's request, the Clerk entered an Order on Entry of Default Judgment against "all person and/or entities claiming damages . . . as a result of the July 10, 2021 voyage . . . who have not filed and served such claim." Dkt. 22. For the next year, the parties proceeded through discovery toward a November 13, 2023 trial date. On October 16, 2023, the parties appeared before me for a pretrial

conference during which we discussed trial procedures. The very next day, Claimants filed their Motion to Lift Stay, along with stipulations. The day after that, Petitioner filed three motions to exclude in advance of the November trial. Given the impending trial, I ordered expedited briefing on Claimants' Motion to Lift Stay, which is now complete.

Petitioner vigorously opposes lifting the stay, and I am sympathetic. It certainly would have been more professional—not to mention courteous—for Claimants' counsel to have filed, *or at least mentioned*, that they were contemplating moving to lift the stay at any point before, *or during*, our pretrial conference. But discourteous behavior is not a sufficient reason to deny Claimants their choice of forum, or their right to try their case to a jury. Nor are any of the reasons advanced by Petitioner sufficient to maintain the stay.

## LEGAL STANDARD

"The Limitation Act allows a shipowner, lacking privity or knowledge, to limit liability for damages arising from a maritime accident to the 'amount or value of the interest of such owner in such vessel, and her freight then pending.'" *Odeco Oil & Gas Co., Drilling Div. v. Bonnette*, 74 F.3d 671, 674 (5th Cir. 1996) (quoting 46 App. U.S.C. § 183(a) (1984)). "A shipowner's right to limitation, however, is cabined by the 'saving to suitors' clause." *Id.* (citing 28 U.S.C. § 1333(1)). "The saving to suitors clause evinces a preference for jury trials and common law remedies in the forum of the claimant's choice." *Id.* "It is a well-settled tenet that a claimant may proceed in state court pursuant to the savings to suitors clause of 28 U.S.C. § 1333 upon the filing of stipulations in the federal court proceeding designed to protect the vessel owner's rights under the Limitation Act." *In re M/V Miss Robbie*, 968 F. Supp. 305, 306 (E.D. La. 1997).

Claimants who wish to have a stay lifted so that they can return to state court must "stipulate that 'the admiralty court reserves exclusive jurisdiction to determine all issues related to the shipowner's right to limit liability, and that no judgment against the shipowner will be asserted to the extent it exceeds the value

of the limitation fund.'" *Id.* at 306–07 (quoting *Magnolia Marine Transport Co., Inc. v. Laplace Towing Corp.*, 964 F.2d 1571, 1575 (5th Cir. 1992)). Claimants must also "waive any claims of res judicata relevant to the issues of limitation of liability or exoneration." *Id.* at 307. "Whether a stipulation adequately protects a party's rights under the Limitation Act is a question of law," but district courts have discretion in deciding whether to lift a stay. *Odeco*, 74 F.3d at 674.

## ANALYSIS

Petitioner advances three arguments as to why Claimants' Motion to Lift Stay should be denied. None are persuasive.

### A.  PENINSULA MARINE, INC. IS NOT A POTENTIAL CLAIMANT

Petitioner first argues that non-party Peninsula Marine, Inc. ("Peninsula Marine")—the operator of the tug towing Petitioner's dredge pipe—is a potential claimant whose stipulation is required before the stay can be lifted. This argument turns on a hypothetical scenario in which, after the stay is lifted and the parties return to state court, "*Claimants* will presumably join Peninsula Marine as a party in the state court matter" and "Peninsula Marine will then presumably file a claim in this limitation action and the parties will re-open this matter in this Court." Dkt. 46 at 8 (emphasis added). Yet, Petitioner conveniently overlooks that the statute of limitations for personal injury actions has expired;[1] all potential claimants who have not filed claims in this proceeding have been defaulted (at Petitioner's request); and Claimants have not brought claims against Peninsula Marine in this proceeding, despite being able to do so. *See* Dkt. 17 at 3 (permitting claims arising from the voyage to be instituted and prosecuted in this proceeding); *see also* FED. R. CIV. P. 14 (governing third-party practice). Additionally, Claimants have stipulated that they "will never file claims against Peninsula Marine in any court in connection with the July 10, 2021 voyage of the dredge General Patton." Dkt. 49 at

---

[1] Under Texas law, "a person must bring suit for . . . personal injury . . . not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a). Thus, the statute of limitations on Claimants' would-be claims against Peninsula Marine expired more than three months ago on July 10, 2023.

1. This statement—made pursuant to Federal Rule of Civil Procedure 11 in conjunction with Claimants' Motion to Lift Stay—means Claimants are judicially estopped from bringing claims against Peninsula Marine once the stay is lifted.[2] *See, e.g.*, *In re Coastal Plains, Inc.*, 179 F.3d 197, 206 (5th Cir. 1999) (holding that a party is judicially estopped from taking a position that is "clearly inconsistent" with a previous position accepted by a court); *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 643 (Tex. 2009) ("Judicial estoppel precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding to obtain an unfair advantage.").

"Here, . . . there are no claims pending in any state or federal court [against Peninsula Marine] and the only 'potential claimants' proffered by [Petitioner] have [not been sued by Claimants] for [more than two] years." *In re Tidewater, Inc.*, 249 F.3d 342, 346 (5th Cir. 2001). "In this instance, where there are currently no third parties involved in any suit, state or federal, and no potential third parties known to [Claimants], the stipulations made by [Claimants] are adequate to protect [Petitioner]'s limitation rights." *In re M/V Miss Robbie*, 968 F. Supp. at 308. The only scenario in which Claimants would sue Peninsula Marine is if *Petitioner* sues Peninsula Marine. Dkt. 49 at 1 ("[I]n the event Petitioner . . . files any claims against Peninsula Marine, Claimants reserve the right to file the appropriate cross-claim against Peninsula Marine."). Thus, the scenario that concerns Petitioner—that Claimants will assert claims against Peninsula Marine—is entirely within *Petitioner's* control. I will not let Petitioner's right to limitation be used as a procedural weapon to deprive Claimants of their choice of forum. "To find otherwise would allow [Petitioner] to literally hold [Claimants'] savings to suitors rights hostage with the cry of *potential* threats to its limitation rights in the form of third party claims of contribution and indemnity which do not yet exist

---

[2] Rule 11 provides that when an attorney files a paper with the court, as Claimants' counsel did here, that attorney is making certain certifications to the Court subject to sanctions.

and in all actuality may never be asserted." *In re M/V Miss Robbie*, 968 F. Supp. at 308. Thus, Peninsula Marine simply is not a potential claimant whose stipulation is required to protect Petitioner's right to limitation.

### B. CLAIMANTS' STIPULATIONS ADEQUATELY PROTECT PETITIONER'S RIGHT TO LIMITATION

Petitioner next argues that "Claimants' stipulation[s] contemplate that they **can** enforce an excess judgment or recovery against [Petitioner]" because Claimants stipulate "only that they 'will not seek to execute on the portion, if any, of a judgment against Petitioner that exceeds Claimants' pro rata portion of the **proper** limitation fund, as determined by the ratio of Claimants' judgment to the total amount of all judgment or settlement of all Claimants.'" Dkt. 46 at 10 (quoting Dkt. 40 at 5). According to Petitioner, "Claimants' added language of the '**proper**' limitation fund leaves open the possibility that they will, in fact, seek recovery in excess of the current limitation fund." *Id.* I disagree.

Claimants have stipulated that this Court has "exclusive jurisdiction to determine all issues related to [Petitioner's] right to limit [its liability]," and that Claimants will not seek to recover more than their pro rata share of whatever is left of the limitation fund *after subtracting* "attorneys' fees and costs which may be assessed against [Petitioner]." Dkt. 40-1 at 1-2; Dkt. 40-2 at 1-2. This is because "references to the 'proper limitation fund' in [Claimants'] stipulation[s] are intended to mean the proper limitation fund, as reduced on account of any award of attorneys' fees and costs (*all as determined by order of this Court* and any appellate review thereof)." Dkt. 40-1 at 2; Dkt. 40-2 at 2 (emphasis added). That is sufficient to protect Petitioner's rights.

### C. INVOKING THE JUDICIAL PROCESS IN FEDERAL COURT IS NOT A VALID REASON TO DENY CLAIMANTS THEIR CHOICE OF FORUM

Petitioner's final argument against lifting the stay is that "Claimants' Motion should be denied because for nearly two (2) years Claimants have submitted themselves to the judicial process of this Court and have taken no action to seek a lifting of the limitation stay until the eve of trial." Dkt. 46 at 11. That is a true

statement of fact, but it is wholly lacking support as a legal argument for why the stay should not be lifted. Indeed, the only cases Petitioner cites in support of this argument are either inapposite, or simply discuss a court's general discretion and inherent power and authority to control its docket. For example, in *Marinechance Shipping, Ltd. v. Sebastian*, the Fifth Circuit affirmed the district court's refusal to lift the stay despite adequate stipulations because the court determined that ruling on a declaratory judgment about whether the suit "must proceed, if at all, in the Philippines," should take priority. 143 F.3d 216, 218 (5th Cir. 1998). Here, by contrast, there is no question that Claimants are "entitled" to their choice of forum. 28 U.S.C. § 1333(1) ("saving to suitors in all cases all other remedies to which they are otherwise entitled").

As I noted above, it was certainly discourteous of Claimants' counsel to attend the pre-trial conference without mentioning that a Motion to Lift Stay was imminent. But that is all it was. Parties port discovery from one forum to another every day without issue. Nothing has been lost by the parties completing discovery in federal court, as opposed to state court. And Petitioner's argument that "Claimants have submitted themselves to the jurisdiction of this court for nearly two years" is a bit much protestation. Claimants were hauled out of their forum of choice into this court *by Petitioner*. Petitioner is receiving all that it is entitled to under the Limitation Act. Claimants should receive what they are entitled to under the savings-to-suitors clause: their choice of forum.

## CONCLUSION

For the reasons stated above, Claimants' Motion to Lift Stay (Dkt. 40) is **GRANTED**. Claimants may proceed with their claims against Callan Marine Ltd. ("Petitioner") in the 10th District Court of Galveston County, Texas.

Petitioner's pending pre-trial motions (*see* Dkts. 41–43) are **DENIED** without prejudice to refiling, should a trial on Petitioner's right to limitation be necessary.

This matter is stayed and administratively closed unless and until Claimants receive a judgment in excess of the limitation fund and the parties inform this Court that further action is required in this limitation proceeding.

SIGNED this 3rd day of November 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE